IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CANDACE CIHOCKI, LINDSY RAY, and FORTUNATA WALKER,** | : : : : | |
| **Plaintiffs,** | : : | **CIVIL ACTION** |
| **v.** | : : | **NO.** |
| **MODEL MANAGEMENT AGENCY INC., MODEL AND TALENT MANAGEMENT AGENCY, INC., GANS GROUP, JC CORPORATE MANAGEMENT INC., JAMES (JIM) GANS, individually, RICHARD (RICK) GANS, individually, and ELLEN WASSER-HRIN, individually,** | : : : : : : : : : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : : : | |

## COMPLAINT

Plaintiffs Candace Cihocki, Lindsy Ray, and Fortunata Walker bring this action against Model Management Agency Inc., Model and Talent Management Agency, Inc., Gans Group, JC Corporate Management Inc., James (Jim) Gans, individually, Richard (Rick) Gans, individually, and Ellen Wasser-Hrin, individually, seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Pennsylvania Wage Payment and Collection Law ("WPCL") 43 P.S. § 260, *et seq.*, and Pennsylvania's Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*

## JURISDICTION AND VENUE

1.     Subject matter jurisdiction over the FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      Subject matter jurisdiction over the WPCL and PMWA claims are based on 28 U.S.C. § 1367.

3.      Venue is based on 28 U.S.C. § 1391 and is appropriate as the conduct giving rise to the claims occurred in the District and one of more of the Defendants reside in the District.

## PARTIES

4.      Plaintiffs are former employees of Defendant Model Management Agency Inc. ("MMA").

5.      Defendants MMA, Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group were joint employers of Plaintiffs.

6.      Upon information and belief, Defendants MMA, Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group are affiliated with John Casablancas and sometimes operate under the John Casablancas name.

7.      Defendant MMA, which is now defunct, was located in Langhorne, Pennsylvania (Bucks County).

8.      Defendant MMA was a full service model and talent agency in the Philadelphia area operated by Ellen Wasser-Hrin, who is named as a defendant in her individual capacity.

9.      Ms. Wasser-Hrin resides in Holland, Pennsylvania (Bucks County).

10.     Upon information and belief, Defendant Model and Talent Management Agency, Inc. is the parent company of Defendant MMA.

11.     Upon information and belief, Defendant Model and Talent Management Agency Inc. is owned by Defendant JC Corporate Management Inc., which is under the corporate umbrella of Defendant Gans Group.

120512810_2

12.     Upon information and belief, Defendants Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group are all located in Chesterfield, Missouri.

13.     Defendant Jim Gans is the President of the Gans Group.

14.     Defendant Jim Gans resides in Chesterfield, Missouri.

15.     Defendant Rick Gans is the Vice President of the Gans Group.

16.     Defendant Rick Gans resides in Chesterfield, Missouri.

17.     Defendants Jim and Rick Gans own and operate the Gans Group, Model and Talent Management Agency Inc., and JC Corporate Management Inc.

## **FACTS**

18.     Defendant MMA employed Plaintiffs as agency assistants.

19.     Plaintiff Ray was employed by MMA from February 2016 until December 2017.

20.     Plaintiff Cihocki was employed by MMA from April 2016 until March 2018.

21.     Plaintiff Walker was employed by MMA from November 2017 until March 2018.

22.     Ms. Wasser-Hrin controlled all day-to-day operations of MMA.

23.     Ms. Wasser-Hrin was the direct supervisor of all Plaintiffs and dictated their assignments, workload, and work schedules.

24.     MMA ceased operations on March 31, 2018.

25.     Throughout her employment with MMA, Plaintiff Ray was paid on an hourly basis of $10/hour and was not exempt from the mandates of the FLSA and/or PMWA.

26.     Throughout her employment with MMA, Plaintiff Cihocki was paid on an hourly basis of $9.75/hour and was not exempt from the mandates of the FLSA and/or PMWA.

27.     Throughout her employment with MMA, Plaintiff Walker was paid on an hourly basis of $9.50/hour and was not exempt from the mandates of the FLSA and/or PMWA.

28.     Plaintiffs were each eligible to receive commissions in addition to their hourly wage.

29.     Plaintiffs' commissions never constituted more than half of their total earnings in a pay period.

30.     Throughout their employment with MMA, Plaintiffs regularly worked in excess of 40 hours in a workweek.

31.     Ms. Wasser-Hrin communicated the expectation to Plaintiffs that they be constantly available and e-mailed and texted them at all hours of the day.

32.     As a result, Plaintiffs regularly worked more than 40 hours a week.  In addition to their regularly scheduled hours, Plaintiffs often worked in the morning before coming into the office, late into the evenings, and on weekends.

33.     In addition to being constantly available, Plaintiffs were also required to work events for which they were not paid.

34.     For example, Plaintiff Cihocki was required to work at a photo shoot, which included meeting with talent and practicing monologues, for which she was never compensated.

35.     Plaintiff Ray was required to work auditions for John Casablancas, which occurred in the evenings and for which she was never compensated.

36.     Defendants failed to record and pay Plaintiffs for all of the time spent performing work activities.  This included regular hours (below 40 hours in a workweek) and overtime hours when Plaintiffs worked above 40 hours in a workweek.

37.     In fact, Plaintiffs were specifically told by Ms. Wasser-Hrin not to record their actual hours worked.

38.     Ms. Wasser-Hrin directed Plaintiffs Cihocki and Ray to report no more than 40 hours per week on their time cards.

39.     Ms. Wasser-Hrin stated that "corporate" would not pay employees for work in excess of 40 hours per week.

40.     Ms. Wasser-Hrin directed Plaintiff Walker to report no more than 30 hours per week on her time card, calling her a "part-time" employee.

41.     In fact, Plaintiff Walker worked approximately 50 hours per week for MMA.

42.     Ms. Wasser-Hrin advised Plaintiffs that they could not record time for work done out of the office, despite the fact that she required Plaintiffs to do work out of the office on a regular basis.

43.     As a result of these common business practices, Defendants failed to compensate Plaintiffs for all work hours, and when warranted, the legally mandated overtime premium for hours worked over 40 in a workweek.

44.     Defendants never paid overtime premium compensation for the hours Plaintiffs worked in excess of 40 hours per workweek.

45.     On average, each of the Plaintiffs worked 50 hours per week.

46.     After the end of Plaintiff Cihocki's employment, Ms. Wasser-Hrin did not pay commissions that Plaintiff Cichocki had previously earned and to which she was entitled.

47.     When Plaintiff Cihocki inquired about her outstanding commission payments, Ms. Wasser-Hrin directed her to take the issue up with "corporate."

48.     Plaintiff Cihocki raised the issue to Sheila Kastner, Human Resources Director for one or more of the entity Defendants, who advised Plaintiff Cihocki that at the direction of Rick Gans the unpaid commissions would be paid out.

49.     As the Vice President of Gans Group, Rick Gans had direct control and authority over the wages paid to Plaintiffs.

50.     Ms. Wasser-Hrin and Rick Gans required Plaintiffs Cihocki and Walker to continue working even after their employment had ended as a condition for them to receive the outstanding commission payments.

51.     Plaintiffs Cihocki and Walker were never paid for the hours they worked in April and May 2018.

52.     Eventually some of the trailing commissions were paid to Plaintiffs Cihocki and Walker, but upon information and belief, there are still outstanding commission payments owed.

53.     Defendants MMA, Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group were joint employers of Plaintiffs.

54.     The number of hours Plaintiffs were permitted to enter on their time sheets was dictated by "corporate" according to Ms. Wasser-Hrin – meaning, upon information and belief, MMA's parent companies: Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group.

55.     As such, Defendants Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group had control over Plaintiffs' work schedules and how much they were paid.

56.     Additionally, Plaintiffs each received a handbook titled "Corporate Code of Ethics and Business Conduct" which states that it applies to:

> "[A]ll affiliated and related operations of JC Corporate Management, Inc., including but not limited to, John Casablancas Modeling & Career Centers, Model and Talent Management, Model Management Agency, or by any other name by which one of the Gans Group of modeling or talent agencies may be known which are operated by the Gans Group, as the context requires."

6

57.     Similar language appears in an "Employment Manual" that was given to each of the Plaintiffs:

> "This manual applies to all affiliated and related operations of the John Casablancas Modeling and Career Centers, including Model and Talent Management, Model Management Agency, Aviage, LLC, Talent Management International or by any other name by which one of the Gans Group modeling or talent agencies may be known which is operated by the Gans Group, as context requires."

58.     The Employment Manual contains policies regarding work schedules, overtime pay, compensation, timekeeping procedures, employee benefits, and employee discipline, including a litany of other policies.

59.     The employment policies in the Employment Manual dictated significant aspects of Plaintiffs' employment.

60.     Plaintiffs were advised to direct human resources inquiries to Sheila Kastner, the Human Resources Director for one or more of the entity Defendants.

61.     MMA's payroll was processed by JC Corporate Management Inc.

62.     MMA's employee tax records were maintained by JC Corporate Management Inc.

63.     All of MMA's billing and collections were processed by JC Corporate Management Inc.

64.     Plaintiff Ray was required to work at auditions for John Casablancas, in addition to her work at MMA, further evidence that there were no clear delineations between the various corporate entities owned by the Gans Group.

65.     MMA, Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group were all under the common control of Rick Gans and Jim Gans.

66.     The Employment Manual encourages employees to raise any questions with "either your supervisor, Human Resources or Jim Gans or Rick Gans."

120512810_2

67.   Rick Gans was directly responsible for the decision to pay trailing commissions to Plaintiffs Cihocki and Walker.

68.   Upon information and belief, Jim Gans and Rick Gans were closely involved with the day-to-day operations of all the companies in the Gans Group, including MMA.

69.   For example, the Employment Manual mandated that Jim Gans or Rick Gans had to be consulted before any employee could be disciplined.

## COUNT I – Alleging Violations of the FLSA

### (against all Defendants)

70.   All previous paragraphs are incorporated as though fully set forth herein.

71.   Plaintiffs were employees entitled to the FLSA's protections.

72.   Defendants are employers covered by the FLSA.

73.   The FLSA entitles employees to compensation for every hour worked in a workweek.  See 29 U.S.C. § 207(a)(1).

74.   The FLSA entitles employees to overtime compensation "not less than one and one-half times" their regular rate of pay for all hours worked over 40 in a workweek.  See 29 U.S.C. § 207(a)(1).

75.   Defendants violated the FLSA by failing to pay Plaintiffs the legally mandated overtime premium compensation.

76.   In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COUNT II – Alleging Violations of the PMWA

### (against all Defendants)

77.   All previous paragraphs are incorporated as though fully set forth herein.

120512810_2

78.     Plaintiffs are employees entitled to the PMWA's protections.

79.     Defendants are employers covered by the PMWA.

80.     The PMWA entitles employees to minimum hourly compensation of $7.25.  See 43 P.S. § 333.104.

81.     The PMWA entitles employees to compensation for every hour worked in a workweek.  *See* 34 Pa. Code § 231.1.

82.     The PMWA entitles employees to overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 P.S. § 333.104(c).

83.     Defendants violated the PMWA by failing to compensate Plaintiffs the legally mandated minimum wage and overtime premium compensation.

84.     In violating the PMWA, Defendant acted willfully and with reckless disregard of clearly applicable PMWA provisions.

## Count III – Alleging Violations of the WPCL

### (against all Defendants)

85.     All previous paragraphs are incorporated as though fully set forth herein.

86.     Plaintiffs were employees of the Defendants within the meaning of the WPCL.

87.     Pursuant to the WPCL, Plaintiffs were entitled to receive all compensation due and owing to them on their regular payday.

88.     As a result of Defendants' unlawful policies, Plaintiffs were not paid for all hours worked and were not paid for all commissions due and owing.

89.     Defendants have no good faith basis for not paying the wages due and owing to Plaintiffs.

90.    Plaintiffs are entitled to recover the amount of unpaid compensation, and an additional 25% of the unpaid compensation as liquidated damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek: unpaid minimum wage and overtime premium compensation; prejudgment interest; liquidated damages; reasonable litigation costs, expenses, and attorney's fees; and any other relief the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial as to all claims so triable.

Dated: January 16, 2019

Katharine V. Hartman, Esquire
PA Attorney I.D. #203697
Danielle Goebel, Esquire
PA Attorney I.D. #313622
**Dilworth Paxson LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: 215-575-7000
*Attorneys for Plaintiffs*

120512810_2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CANDACE CIHOCKI, LINDSY RAY, and FORTUNATA WALKER,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.** |
| | : | |
| **MODEL MANAGEMENT AGENCY INC., MODEL AND TALENT MANAGEMENT AGENCY, INC., GANS GROUP, JC CORPORATE MANAGEMENT INC., JAMES (JIM) GANS, individually, RICHARD (RICK) GANS, individually, and ELLEN WASSER-HRIN, individually,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

Plaintiffs Candace Cihocki, Lindsy Ray, and Fortunata Walker bring this action against Model Management Agency Inc., Model and Talent Management Agency, Inc., Gans Group, JC Corporate Management Inc., James (Jim) Gans, individually, Richard (Rick) Gans, individually, and Ellen Wasser-Hrin, individually, seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Pennsylvania Wage Payment and Collection Law ("WPCL") 43 P.S. § 260, *et seq.*, and Pennsylvania's Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*

## JURISDICTION AND VENUE

1.     Subject matter jurisdiction over the FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

120512810_2

2.      Subject matter jurisdiction over the WPCL and PMWA claims are based on 28 U.S.C. § 1367.

3.      Venue is based on 28 U.S.C. § 1391 and is appropriate as the conduct giving rise to the claims occurred in the District and one of more of the Defendants reside in the District.

**PARTIES**

4.      Plaintiffs are former employees of Defendant Model Management Agency Inc. ("MMA").

5.      Defendants MMA, Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group were joint employers of Plaintiffs.

6.      Upon information and belief, Defendants MMA, Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group are affiliated with John Casablancas and sometimes operate under the John Casablancas name.

7.      Defendant MMA, which is now defunct, was located in Langhorne, Pennsylvania (Bucks County).

8.      Defendant MMA was a full service model and talent agency in the Philadelphia area operated by Ellen Wasser-Hrin, who is named as a defendant in her individual capacity.

9.      Ms. Wasser-Hrin resides in Holland, Pennsylvania (Bucks County).

10.     Upon information and belief, Defendant Model and Talent Management Agency, Inc. is the parent company of Defendant MMA.

11.     Upon information and belief, Defendant Model and Talent Management Agency Inc. is owned by Defendant JC Corporate Management Inc., which is under the corporate umbrella of Defendant Gans Group.

120512810_2

12.     Upon information and belief, Defendants Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group are all located in Chesterfield, Missouri.

13.     Defendant Jim Gans is the President of the Gans Group.

14.     Defendant Jim Gans resides in Chesterfield, Missouri.

15.     Defendant Rick Gans is the Vice President of the Gans Group.

16.     Defendant Rick Gans resides in Chesterfield, Missouri.

17.     Defendants Jim and Rick Gans own and operate the Gans Group, Model and Talent Management Agency Inc., and JC Corporate Management Inc.

## FACTS

18.     Defendant MMA employed Plaintiffs as agency assistants.

19.     Plaintiff Ray was employed by MMA from February 2016 until December 2017.

20.     Plaintiff Cihocki was employed by MMA from April 2016 until March 2018.

21.     Plaintiff Walker was employed by MMA from November 2017 until March 2018.

22.     Ms. Wasser-Hrin controlled all day-to-day operations of MMA.

23.     Ms. Wasser-Hrin was the direct supervisor of all Plaintiffs and dictated their assignments, workload, and work schedules.

24.     MMA ceased operations on March 31, 2018.

25.     Throughout her employment with MMA, Plaintiff Ray was paid on an hourly basis of $10/hour and was not exempt from the mandates of the FLSA and/or PMWA.

26.     Throughout her employment with MMA, Plaintiff Cihocki was paid on an hourly basis of $9.75/hour and was not exempt from the mandates of the FLSA and/or PMWA.

27.     Throughout her employment with MMA, Plaintiff Walker was paid on an hourly basis of $9.50/hour and was not exempt from the mandates of the FLSA and/or PMWA.

120512810_2

28.     Plaintiffs were each eligible to receive commissions in addition to their hourly wage.

29.     Plaintiffs' commissions never constituted more than half of their total earnings in a pay period.

30.     Throughout their employment with MMA, Plaintiffs regularly worked in excess of 40 hours in a workweek.

31.     Ms. Wasser-Hrin communicated the expectation to Plaintiffs that they be constantly available and e-mailed and texted them at all hours of the day.

32.     As a result, Plaintiffs regularly worked more than 40 hours a week.  In addition to their regularly scheduled hours, Plaintiffs often worked in the morning before coming into the office, late into the evenings, and on weekends.

33.     In addition to being constantly available, Plaintiffs were also required to work events for which they were not paid.

34.     For example, Plaintiff Cihocki was required to work at a photo shoot, which included meeting with talent and practicing monologues, for which she was never compensated.

35.     Plaintiff Ray was required to work auditions for John Casablancas, which occurred in the evenings and for which she was never compensated.

36.     Defendants failed to record and pay Plaintiffs for all of the time spent performing work activities.  This included regular hours (below 40 hours in a workweek) and overtime hours when Plaintiffs worked above 40 hours in a workweek.

37.     In fact, Plaintiffs were specifically told by Ms. Wasser-Hrin not to record their actual hours worked.

120512810_2

38.     Ms. Wasser-Hrin directed Plaintiffs Cihocki and Ray to report no more than 40 hours per week on their time cards.

39.     Ms. Wasser-Hrin stated that "corporate" would not pay employees for work in excess of 40 hours per week.

40.     Ms. Wasser-Hrin directed Plaintiff Walker to report no more than 30 hours per week on her time card, calling her a "part-time" employee.

41.     In fact, Plaintiff Walker worked approximately 50 hours per week for MMA.

42.     Ms. Wasser-Hrin advised Plaintiffs that they could not record time for work done out of the office, despite the fact that she required Plaintiffs to do work out of the office on a regular basis.

43.     As a result of these common business practices, Defendants failed to compensate Plaintiffs for all work hours, and when warranted, the legally mandated overtime premium for hours worked over 40 in a workweek.

44.     Defendants never paid overtime premium compensation for the hours Plaintiffs worked in excess of 40 hours per workweek.

45.     On average, each of the Plaintiffs worked 50 hours per week.

46.     After the end of Plaintiff Cihocki's employment, Ms. Wasser-Hrin did not pay commissions that Plaintiff Cichocki had previously earned and to which she was entitled.

47.     When Plaintiff Cihocki inquired about her outstanding commission payments, Ms. Wasser-Hrin directed her to take the issue up with "corporate."

48.     Plaintiff Cihocki raised the issue to Sheila Kastner, Human Resources Director for one or more of the entity Defendants, who advised Plaintiff Cihocki that at the direction of Rick Gans the unpaid commissions would be paid out.

120512810_2

49.     As the Vice President of Gans Group, Rick Gans had direct control and authority over the wages paid to Plaintiffs.

50.     Ms. Wasser-Hrin and Rick Gans required Plaintiffs Cihocki and Walker to continue working even after their employment had ended as a condition for them to receive the outstanding commission payments.

51.     Plaintiffs Cihocki and Walker were never paid for the hours they worked in April and May 2018.

52.     Eventually some of the trailing commissions were paid to Plaintiffs Cihocki and Walker, but upon information and belief, there are still outstanding commission payments owed.

53.     Defendants MMA, Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group were joint employers of Plaintiffs.

54.     The number of hours Plaintiffs were permitted to enter on their time sheets was dictated by "corporate" according to Ms. Wasser-Hrin – meaning, upon information and belief, MMA's parent companies: Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group.

55.     As such, Defendants Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group had control over Plaintiffs' work schedules and how much they were paid.

56.     Additionally, Plaintiffs each received a handbook titled "Corporate Code of Ethics and Business Conduct" which states that it applies to:

> "[A]ll affiliated and related operations of JC Corporate Management, Inc., including but not limited to, John Casablancas Modeling & Career Centers, Model and Talent Management, Model Management Agency, or by any other name by which one of the Gans Group of modeling or talent agencies may be known which are operated by the Gans Group, as the context requires."

6

120512810_2

57.      Similar language appears in an "Employment Manual" that was given to each of the Plaintiffs:

> "This manual applies to all affiliated and related operations of the John Casablancas Modeling and Career Centers, including Model and Talent Management, Model Management Agency, Aviage, LLC, Talent Management International or by any other name by which one of the Gans Group modeling or talent agencies may be known which is operated by the Gans Group, as context requires."

58.      The Employment Manual contains policies regarding work schedules, overtime pay, compensation, timekeeping procedures, employee benefits, and employee discipline, including a litany of other policies.

59.      The employment policies in the Employment Manual dictated significant aspects of Plaintiffs' employment.

60.      Plaintiffs were advised to direct human resources inquiries to Sheila Kastner, the Human Resources Director for one or more of the entity Defendants.

61.      MMA's payroll was processed by JC Corporate Management Inc.

62.      MMA's employee tax records were maintained by JC Corporate Management Inc.

63.      All of MMA's billing and collections were processed by JC Corporate Management Inc.

64.      Plaintiff Ray was required to work at auditions for John Casablancas, in addition to her work at MMA, further evidence that there were no clear delineations between the various corporate entities owned by the Gans Group.

65.      MMA, Model and Talent Management Agency Inc., JC Corporate Management Inc., and Gans Group were all under the common control of Rick Gans and Jim Gans.

66.      The Employment Manual encourages employees to raise any questions with "either your supervisor, Human Resources or Jim Gans or Rick Gans."

67.     Rick Gans was directly responsible for the decision to pay trailing commissions to Plaintiffs Cihocki and Walker.

68.     Upon information and belief, Jim Gans and Rick Gans were closely involved with the day-to-day operations of all the companies in the Gans Group, including MMA.

69.     For example, the Employment Manual mandated that Jim Gans or Rick Gans had to be consulted before any employee could be disciplined.

## COUNT I – Alleging Violations of the FLSA

### (against all Defendants)

70.     All previous paragraphs are incorporated as though fully set forth herein.

71.     Plaintiffs were employees entitled to the FLSA's protections.

72.     Defendants are employers covered by the FLSA.

73.     The FLSA entitles employees to compensation for every hour worked in a workweek.  See 29 U.S.C. § 207(a)(1).

74.     The FLSA entitles employees to overtime compensation "not less than one and one-half times" their regular rate of pay for all hours worked over 40 in a workweek.  See 29 U.S.C. § 207(a)(1).

75.     Defendants violated the FLSA by failing to pay Plaintiffs the legally mandated overtime premium compensation.

76.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COUNT II – Alleging Violations of the PMWA

### (against all Defendants)

77.     All previous paragraphs are incorporated as though fully set forth herein.

120512810_2

78.     Plaintiffs are employees entitled to the PMWA's protections.

79.     Defendants are employers covered by the PMWA.

80.     The PMWA entitles employees to minimum hourly compensation of $7.25.  See 43 P.S. § 333.104.

81.     The PMWA entitles employees to compensation for every hour worked in a workweek.  *See* 34 Pa. Code § 231.1.

82.     The PMWA entitles employees to overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 P.S. § 333.104(c).

83.     Defendants violated the PMWA by failing to compensate Plaintiffs the legally mandated minimum wage and overtime premium compensation.

84.     In violating the PMWA, Defendant acted willfully and with reckless disregard of clearly applicable PMWA provisions.

### Count III – Alleging Violations of the WPCL

### (against all Defendants)

85.     All previous paragraphs are incorporated as though fully set forth herein.

86.     Plaintiffs were employees of the Defendants within the meaning of the WPCL.

87.     Pursuant to the WPCL, Plaintiffs were entitled to receive all compensation due and owing to them on their regular payday.

88.     As a result of Defendants' unlawful policies, Plaintiffs were not paid for all hours worked and were not paid for all commissions due and owing.

89.     Defendants have no good faith basis for not paying the wages due and owing to Plaintiffs.

120512810_2

90.     Plaintiffs are entitled to recover the amount of unpaid compensation, and an additional 25% of the unpaid compensation as liquidated damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek: unpaid minimum wage and overtime premium compensation; prejudgment interest; liquidated damages; reasonable litigation costs, expenses, and attorney's fees; and any other relief the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial as to all claims so triable.

Dated: January 16, 2019

Katharine V. Hartman, Esquire
PA Attorney I.D. #203697
Danielle Goebel, Esquire
PA Attorney I.D. #313622
**Dilworth Paxson LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: 215-575-7000
*Attorneys for Plaintiffs*

120512810_2